[Cite as *State v. Jackson*, 2021-Ohio-4619.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                         Court of Appeals No. S-20-036

    Appellee                                     Trial Court No.  20 CR 211

v.

Jaleel H. Jackson                              **DECISION AND JUDGMENT**

    Appellant                                    Decided:  December 29, 2021

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

James H. Ellis, III, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from an October 9, 2020 judgment of the Sandusky County

Court of Common Pleas, denying appellant's Crim.R. 29(A) motion for acquittal and

convicting appellant on one count of drug trafficking, in violation of R.C. 2925.03(A), a

felony of the fifth degree, and one count of corrupting another with drugs, in violation of R.C. 2925.02(A), a felony of the second degree. Appellant was found not guilty on one count of involuntary manslaughter, in violation of R.C. 2903.04(A), a felony of the first degree.

{¶ 2} On October 14, 2020, appellant was sentenced to a one-year term of incarceration on the drug trafficking conviction, and an indefinite term of incarceration, ranging from a minimum term of six years to a maximum term of nine years, on the corrupting another with drugs conviction, with the the sentences ordered to be served concurrently. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Jaleel Jackson, sets forth the four (4) assignments of error:

A. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

B. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL.

C. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING BEYOND A REASONABLE DOUBT THAT APPELLANT WAS GUILTY OF TRAFFIC[K]ING IN DRUGS.

D. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A FINDING BEYOND A REASONABLE DOUBT

2.

THAT APPELLANT WAS GUILTY OF CORRUPTING ANOTHER

WITH DRUGS.

**{¶ 4}** The following undisputed facts are relevant to this appeal. On October 7, 2019, Jessica Kraus, a Fremont resident, texted appellant seeking to purchase drugs. Appellant swiftly replied, confirming his interest in the transaction. The parties then engaged in a series of text and social media electronic message exchanges, during which the details of the pending drug sale were finalized.

**{¶ 5}** Shortly thereafter, the parties met and the drug sale was completed. Subsequently, appellant texted Kraus, "*I gave you the wrong bag*." (Emphasis added). Kraus did not reply. In the interim, she had consumed the drugs and died from a massive fentanyl overdose.

**{¶ 6}** On October 8, 2019, Kraus died in her residence from combined drug toxicity, including fentanyl and cocaine. To put the magnitude of the overdose into context, an examination of comparative levels of fentanyl is informative.

**{¶ 7}** A therapeutic dose of fentanyl is approximately one nanogram per milliliter in the bloodstream. A fatal dose of fentanyl is considered to be approximately five nanograms per milliliter in the bloodstream.

**{¶ 8}** By contrast, post-mortem testing found that Kraus had 38 nanograms of fentanyl per milliliter in her bloodstream, an amount thirty-eight times greater than a therapeutic level and eight times greater than a level considered to be fatal.

3.

{¶ 9} On February 21, 2020, appellant was indicted on one count of drug trafficking, in violation of R.C. 2925.03(A), a felony of the fifth degree, one count of corrupting another with drugs, in violation of R.C. 2925.02(A), a felony of the second degree, and one count of involuntary manslaughter, in violation of R.C. 2903.04(A), a felony of the first degree.

{¶ 10} On October 8, 2020, a two-day jury trial commenced. At trial, the state presented detailed testimony from multiple law enforcement officers and related expert witnesses similarly involved in the investigation of the fatal fentanyl overdose underlying this case.

{¶ 11} The state's witnesses included the sergeant in the Fremont Police Department who first responded to the scene, two detectives with the Fremont Police Department who joined the response at the scene and assisted in the investigation, the BCI forensic scientist who tested and identified the substances recovered at the scene, the BCI special agent in the cyber division who assisted in the electronic communications aspects of the investigation, and the forensic pathologist who conducted the post-mortem examination and tests performed to determine the various substance levels present in the decedent.

{¶ 12} On October 9, 2020, pursuant to Crim.R. 29, appellant's counsel motioned the court for an acquittal on all counts. The motion was denied. Following jury deliberations, appellant was acquitted on the count of involuntary manslaughter, and convicted on the remaining counts of drug trafficking and corrupting another with drugs.

4.

{¶ 13} On October 14, 2020, appellant was sentenced to a one-year term of incarceration on the drug trafficking conviction, along with an indefinite term of incarceration, ranging from a minimum of six years to a maximum of nine years, on the corrupting another with drugs conviction, with the sentences ordered to be served concurrently. This appeal ensued.

{¶ 14} In the first assignment of error, appellant argues that he received ineffective assistance of trial counsel. We do not concur.

{¶ 15} It is well-established that in order to demonstrate ineffective assistance of counsel, one must satisfy a two-prong test. First, it must be shown that counsel's representation was deficient in some specific way, falling below an objective standard of reasonableness. If the first prong is satisfied, then it must be shown that, but for the demonstrated deficiency, the outcome of the case would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 16} Appellate courts must be highly deferential and retain a strong presumption that counsel's conduct fell within the range of reasonable professional assistance when reviewing claims of ineffective assistance of counsel. *Id.* At 689.

{¶ 17} In conjunction, a properly licensed attorney in Ohio is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Tactical, strategic decisions do not constitute a meritorious basis of an ineffective assistance of counsel claim. *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995).

5.

{¶ 18} Specifically, in support of the ineffective assistance of counsel claim, appellant cites to trial counsel's decision to decline to call David Scott ("Scott"), to testify as a witness at trial. Scott was Kraus's boyfriend and was present at the time of her death.

{¶ 19} Appellant engages in multiple layers of speculation to ultimately suggest that appellant would not have been convicted had Scott testified. Appellant implies, without supporting evidence, that Scott, rather than appellant, furnished the fatal fentanyl drugs to Kraus.

{¶ 20} The record of evidence is devoid of evidence in support of appellant's conjecture that Scott furnished the subject drugs or that that's Scott testimony would have been outcome determinative, rather than an acceptable strategical decision.

{¶ 21} Conversely, a series of specific electronic communications exchanged between Kraus and appellant in the hours immediately preceding her fentanyl overdose death, clearly reflecting appellant's sale of drugs to Kraus and appellant's subsequent warning to Kraus that he had given her the "wrong bag", plainly refutes appellant's insinuation regarding Scott.

{¶ 22} Accordingly, we find that appellant has failed to demonstrate that, but for trial counsel's tactical decision to not call Scott as a witness, the outcome of this case would have been different. We find appellant's first assignment of error not well-taken.

{¶ 23} Given that appellant's remaining three assignments of error, disputing the trial court's denial of appellant's Crim.R. 29 motion for acquittal and disputing the

6.

sufficiency of the evidence supporting the convictions, are all rooted in the common legal premise that appellant's convictions were not supported by sufficient evidence, we shall address them simultaneously.

{¶ 24} It is well-established that, "A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39." *State v. Shelby*, 6th Dist. Wood No. WD-17-056, 135 N.E.3d 508, 2019-Ohio-1564, ¶ 17.

{¶ 25} Accordingly, the denial of a Crim.R. 29(A) motion for acquittal is governed by the same standard as that which is utilized in determining whether a verdict is supported by sufficient evidence. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 26} Resolving a sufficiency of the evidence challenge requires our consideration of whether, when the evidence is examined in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the crimes proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). The appellate court must assess whether the evidence, if believed, would support a conviction. *Jenks* at paragraph two of the syllabus.

{¶ 27} Appellant's Crim.R. 29(A) motion for acquittal on all counts was denied. He was subsequently convicted of one count of trafficking in drugs, in violation of R.C. 2925.03(A), a felony of the fifth degree, and one count of corrupting another with drugs, in violation of R.C. 2925.02(A), a felony of the second degree.

7.

{¶ 28} As relates to the drug trafficking conviction, R.C. 2925.03(A)(1)(C)(9) establishes that no person shall, "Sell or offer to sell a controlled substance or a controlled substance analog; if the drug involved in the violation is a fentanyl-related compound."

{¶ 29} As relates to the corrupting another with drugs conviction, R.C. 2925.02(A)(3) establishes that no person shall, "By any means, administer or furnish to another, or induce or cause another to use, a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent."

{¶ 30} We shall now examine the sufficiency of the evidence supporting the convictions on these two offenses. In the course of the jury trial, appellee called multiple supporting law enforcement and related expert witnesses involved in the investigation of this case.

{¶ 31} Testifying first at trial was Sergeant Kingsborough of the Fremont Police Department. He testified that on October 9, 2019, he responded to a call regarding an unresponsive female. Upon arrival at Kraus's duplex residence, he found her unresponsive, unclothed, on the floor, with drug paraphernalia and residue present, and accordingly determined that she was suffering from a probable drug overdose.

{¶ 32} Kingsborough secured the scene with the assistance of another responding officer. He then notified the chain of command that the circumstances observed at the scene necessitated that an investigation into the matter should commence.

{¶ 33} Testifying next was Detective Holskey of the Fremont Police Department. Holskey. Holskey testified that he had successfully completed drug overdose investigation training conducted by the Ohio Attorney General's office. Accordingly, Holskey reported to the scene upon learning of it, and assisted in the investigation.

{¶ 34} Holskey testified that when emergency medical responders arrived at the scene, they determined that Kraus had expired. During Holskey's examination of the premises, he recovered an open baggie of drugs in the bathroom. In addition, he recovered a sheet of notebook paper from the top of her bedroom dresser containing the user names and passwords for Kraus's online accounts. Holskey assisted the other officers in processing the scene and gathering evidence.

{¶ 35} BCI forensic drug chemistry scientist Sarah Tipton next testified that the above-referenced drug residue evidence that was recovered was lab tested and found to contain remarkably high levels of fentanyl, consistent with the post-mortem level found in Kraus, which exceeded the fatality threshold by a factor of 8. It also contained tramadol, cocaine, heroin, and carfentanil.

{¶ 36} Detective Jason Kiddey of the Fremont Police Department next furnished detailed testimony regarding the recovery of the electronic communications evidence exchanged between appellant and Kraus just prior to the death, and pertinent to this appeal.

{¶ 37} As one of the responding officers on the scene, Kiddey recovered the decedent's activated, unlocked mobile phone. Kiddey testified at length regarding the

9.

numerous text messages, and other social media exchanges, which had been exchanged between Kraus and appellant in the hours preceding her death. The content of these communications showed appellant's sale of drugs to Kraus shortly preceding her fentanyl overdose death.

{¶ 38} Approximately five hours before emergency responders were called to her residence, Kraus texted appellant, "Bring me a 40 and 20." Appellant texted back, "You want a 40 and 20 wya [where you at]?"

{¶ 39} Shortly thereafter, Kraus texted appellant, "Here." Appellant replied, "Out back." Several minutes later, after the exchange, appellant texted Kraus, "You sure it's [the payment for the drugs] on here[,] you say take it to any ATM?" Kraus replied, "Yeah, it's on there." Appellant responded, "If this money [is] not on here you will never get shit [drugs] again."

{¶ 40} Approximately 20 minutes later, appellant messaged Kraus through Facebook Messenger, "You knew there wasn't none on that card. It do take a pin. That's cool. That 30 you got won't get you anything else."

{¶ 41} Appellant texted Kraus approximately four hours before emergency responders were called to her residence, "I want to check the balance. What's the last four of your social? Yo, it says the card [is] not active yet. If the money [is] not on here, you will never get shit again."

{¶ 42} Appellant later texted Kraus, "I gave you the wrong bag [of drugs]." There was no reply.

10.

{¶ 43} Dr. Jeffrey Hudson ("Hudson"), appellee's forensic pathologist, next testified. Hudson testified regarding his performance of the post-mortem examination of Kraus and his compilation of findings and reports connected to same.

{¶ 44} Hudson testified that the testing he conducted on decedent's blood and urine reflected the presence of cocaine, tramadol, and a massive amount of fentanyl. Hudson testified that the amount of fentanyl present in the decedent's blood was at a level of approximately eight times higher than the normal fentanyl fatality threshold.

{¶ 45} After appellee concluded the presentation of their case, counsel for appellant made a Crim.R. 29(A) motion for acquittal. It was denied. The jury began deliberations. Appellant was convicted on one count of drug trafficking, and one count of corrupting another with drugs. Appellant was acquitted on the count of involuntary manslaughter.

{¶ 46} In support of challenging the trial court's denial of the motion for acquittal and the sufficiency of the evidence in support of the convictions, appellant maintains that, "These text messages were tortuously construed to create the inference that appellant sold a controlled substance [to decedent]."

{¶ 47} We note that the above-quoted plain language of the numerous electronic messages between appellant and Kraus, as well as the consistent timing of same in relation to Kraus's consumption of drugs and fentanyl overdose death, do not comport with appellant's position.

{¶ 48} Without supporting evidence, appellant attempts to implicate Scott in the crimes for which appellant has been convicted.

{¶ 49} We are not persuaded. On the contrary, the plain meaning of the numerous electronic communications recovered from her devices, which occurred between appellant and Kraus in the hours immediately preceding her fentanyl overdose death, clearly support of a finding of appellant's culpability for the crimes of which he was convicted.

{¶ 50} The record contains unrefuted evidence that Kraus sought to purchase illegal drugs from appellant, appellant furnished the drugs to Kraus, she consumed them, and thereafter died of a massive fentanyl overdose.

{¶ 51} Accordingly, we find that when examining the evidence in this case in the light most favorable to appellee, a rational trier of fact could have found that the state proved via evidence which, if believed, established beyond a reasonable doubt that appellant sold fentanyl to Kraus, the sale of the fentanyl induced her to use the fentanyl, and that caused her serious physical harm, her fatal drug overdose, thereby constituting the elements of drug trafficking and corrupting another with drugs.

{¶ 52} Wherefore, we find that the trial court properly denied appellant's motion to acquit, and relatedly, we further find that appellant's convictions were supported by sufficient evidence. Accordingly, appellant's second, third, and fourth assignments of error, are found not well-taken.

12.

**{¶ 53}** On consideration whereof, the judgment of the Sandusky County Court of

Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal

pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                            _____

JUDGE

Gene A. Zmuda, P.J.

_____

Myron C. Duhart, J.                             JUDGE

CONCUR.

_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.