[Cite as *State v. Prophet*, 2023-Ohio-3833.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio

      Appellee

v.

Malcolm Prophet

      Appellant

Court of Appeals No.  S-22-024

Trial Court No.  21CR85

**DECISION AND JUDGMENT**

Decided:  October 20, 2023

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from an October 17, 2022 judgment of the Sandusky

County Court of Common Pleas, finding appellant guilty on one count of attempted gross

sexual imposition, in violation of R.C. 2907.05 and 2923.02, a felony of the fourth

degree.  For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} Appellant, Malcolm Prophet, sets forth the following two assignments of error:

     I. [APPELLANT] RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL FORGOT TO SUBPOENA A CRITICAL WITNESS FOR TRIAL.

     II. THE TRIAL COURT ERRED WHEN, AFTER LEARNING OF DEFENSE COUNSEL[']S CONDUCT, IT FAILED TO GRANT A MISTRIAL.

{¶ 3} The following undisputed facts are relevant to this appeal. On December 17, 2020, appellant joined his cousin's family for dinner at their residence in Clyde, Ohio. Following dinner, appellant's cousin and his fiancée were in the kitchen, performing cleanup duties, while appellant was in the adjacent living room, alone with the couple's three-year-old daughter.

{¶ 4} Upon looking out into the living room to check on their daughter, her parents observed appellant seated immediately adjacent to her, his pants pulled down, his penis exposed, actively engaged in masturbation. In response, the girl's mother ran into the living room, screamed at appellant, scooped up her daughter, and took her out of the room. Appellant said nothing and quickly pulled up his pants.

{¶ 5} The victim's mother then yelled to her fiancé, the victim's father, that she wanted appellant out of their home at once. Thereafter, they drove appellant, who did not

2.

have an automobile, back to the residence in Sandusky where he was staying at the time of this incident. After transporting appellant back to Sandusky, they drove back to Clyde, went directly to the Clyde police department, and reported the incident to the police.

{¶ 6} Several days after the victim's parents reported the incident to the police, thereby triggering a police investigation, appellant called the victim's father. When he declined to answer appellant's call, appellant then messaged him on Facebook messenger and accused him of causing him to lose his job as a consequence of the incident being reported and triggering an investigation.

{¶ 7} In response to being blamed for appellant losing his job, the victim's father messaged appellant, "*How could I [be responsible for appellant losing his job] when you were the one who pulled your dick out in front of my daughter[?]*" (Emphasis added).

{¶ 8} In turn, appellant messaged back an acknowledgement of the incident, stating, "*I can technically marry her [his cousin's three-year-old niece] * * * that's the only reason I did that [masturbated in front of her] wtf [cousin].*" (Emphasis added).

{¶ 9} On February 5, 2021, following the police investigation, appellant was indicted on one count of gross sexual imposition, in violation of R.C. 2907.05, a felony of the third degree. R.C. 2907.05 (A)(4) establishes that, "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * the other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

3.

{¶ 10} On October 11, 2022, the case proceeded to a jury trial. During the course of the trial, appellee presented the testimony of Officer Baur ("Baur"), the investigating police officer, and the eyewitness testimony of the victim's parents. Baur testified that the victim's father had reported to the officer that he had observed, "[Appellant] kneeling down with his pants down, his penis in his hand while he was masturbating, and he said that he had his hand on the back of [the victim's] right thigh."

{¶ 11} The officer further elaborated that his investigation uncovered no evidence that appellant had ejaculated or that the victim had been raped or sexually assaulted. The officer testified that the victim's father had provided him with a copy of appellant's Facebook messages to him following the incident, including the above-quoted acknowledgement by appellant of committing the action underlying the offense.

{¶ 12} The trial court next heard testimony from Aariona Sims ("Sims"), the victim's mother. Sims testified that on the night of the incident appellant seemed, "Off * * * not like he usually was." In describing the basis of her perception that something struck her as amiss with appellant prior to the incident, she testified that, "[Appellant] was following [the victim] around * * * He was going up to her room, trying to get into her bed."

{¶ 13} Sims testified that, as she was cleaning up the kitchen, she became concerned about the victim being alone with appellant in the living room given that appellant had been acting strangely during his visit that day. Accordingly, Sims decided

4.

to look out into the living room to check on her daughter. Sims testified that upon doing so, she observed appellant seated next to her daughter, with his pants pulled down, his penis exposed, and, "He was stroking his -- like, [he was] masturbating * * * he was rubbing her legs." In response to seeing this, Sims testified that she ran out into the room, screamed at appellant, grabbed her daughter, and carried her out of the room. Appellant said nothing to Sims and quickly pulled his pants up. Sims then testified that after she and her fiancé drove appellant back to Sandusky, they promptly returned to Clyde and filed a police report.

{¶ 14} Jeremiah Steel ("Steel"), Sims' fiancé and the victim's father, next testified. Steel testified that appellant is his cousin and that, prior to this incident, they had been on close terms. The two of them had previously worked construction jobs together. Steel testified that on the day of the incident he had offered to pick appellant up and bring him back to his residence in Clyde to join his family for dinner. Steel testified that as he and Sims were cleaning up in the kitchen after dinner, they looked out into the living room to check on their daughter. Steel testified that he observed appellant, "[O]n his hands and knees with * * * [his] scrotum out in his hands * * * [the victim] sitting in front of him, [appellant] sitting back and tugging on himself in front of my daughter * * * masturbating."

5.

{¶ 15} On the issue of physical contact, Steel was asked, "Was [appellant] touching your daughter?"  Steel replied, "*He was starting – getting ready to*."  (Emphasis added).  Following Steel's testimony, appellee rested the presentation of their case.

{¶ 16} At this juncture, appellant requested, and was granted, a one-day continuance in order to attempt to secure an investigator, who appellant had not subpoenaed, but who he now decided that he wished to have testify to rebut the trial testimony of Sims on the issue of physical touching between appellant and the victim.

{¶ 17} The express purpose of the desired rebuttal testimony of the investigator was to confirm a telephone conversation between Sims and the investigator during which Sims indicated that although she had observed appellant masturbating next to her daughter, she did not see appellant physically touch her daughter, as opposed to her trial testimony incongruously stating that appellant was rubbing her daughter's legs while he was masturbating.  In addition to being granted the continuance, appellant was also granted leave to recall Sims to the stand to directly cross-examine her regarding the above-described discrepancy.

{¶ 18} The following day, appellant began the presentation of the defense of the case.  Appellant first called Malina James ("James"), appellant's mother, as a witness for the defense.  James testified that she now lives in Pennsylvania.  Unexpectedly for the defense, James testified that appellant's reputation among family members is one of "manipulation."  James then testified that appellant, "lies to get what he wants."  Despite

6.

being reminded of the consequences of perjury, James remained unwavering in her testimony adverse to appellant, her son.

{¶ 19} At the conclusion of the adverse testimony of his mother, a witness that he had called, appellant requested a second continuance, in order to again attempt to secure the voluntary testimony of the above-discussed investigator, who had declined to appear voluntarily after being contacted by appellant following the first continuance.

{¶ 20} The trial court denied a second continuance, but it permitted appellant to recall Sims to undergo cross-examination regarding the above-discussed telephone conversation between the investigator and Sims, in which Sims denied seeing appellant touch her daughter while he was masturbating in front of her.

{¶ 21} Under recross, Sims directly conceded telling the investigator during their telephone conversation that while she observed appellant masturbating next to her daughter, she did not recall seeing appellant touch her daughter.

{¶ 22} In elaborating on the discrepancy with her direct examination trial testimony on the issue of physical contact, in which she stated that she had observed appellant rubbing her daughter's legs while he was masturbating, Sims explained, "I told [the investigator] I don't remember * * * I don't really recall * * * that's what I told him * * * I didn't know who this person was.  He called me out of the blue."

7.

{¶ 23} Upon redirect, Sims explained that the investigator telephoned her out of the blue, he did not clearly identify himself, and that she felt uncomfortable discussing the case with him.

{¶ 24} Following the additional recross testimony of Sims, appellant rested their defense of the case and made a Crim.R. 29 motion for acquittal on the basis of the conflicting statements by Sims regarding whether or not appellant had physically touched the victim while masturbating next to her. Appellee argued in opposition that the recross-examination of Sims entailed her direct acknowledgment of the discrepancy, irrespective of the investigator not appearing voluntarily to confirm same, and that it constituted a witness credibility issue proper for the jury to weigh and consider, as related to the issue of whether physical contact occurred between appellant and the victim during the incident. The trial court concurred. The motion for acquittal was denied and the case was submitted to the jury. In addition, the jury was instructed, given the above-detailed facts and circumstances presented at trial, to also consider the lesser included offense of attempted gross sexual imposition, in violation of R.C. 2907.05 and 2923.02.

{¶ 25} R.C. 2923.02 (A)-(B) establishes that, "No person, purposely or knowingly * * * shall engage in conduct that, if successful, would constitute or result in the offense * * * It is no defense to a charge that, in retrospect, commission of the offense * * * was either factually or legally impossible under the attendant circumstances."

8.

{¶ 26} The jury deliberated and declined to find appellant guilt of gross sexual imposition, but rather, the jury found appellant guilty of the lesser included offense of attempted gross sexual imposition, in violation of R.C. 2907.05 and 2923.02, a felony of the fourth degree.

{¶ 27} On October 19, 2022, appellant was sentenced. At sentencing, the trial court noted that appellant's relationship with the victim facilitated the offense, and that appellant showed no remorse for the offense. Appellant was sentenced to an 18-month term of incarceration. This appeal ensued.

{¶ 28} In his first assignment of error, Prophet alleges that he received ineffective assistance of counsel based upon the claim that defense counsel "forgot" to subpoena the investigator who had spoken to Sims about the incident.

{¶ 29} As this court recently held in *State v. Lofton*, 6th Dist. Lucas No. L-22-1111, 2023-Ohio-2796, ¶ 8,

> To overcome her trial counsel's presumption of competence, appellant has the burden to show both: (1) deficient performance by her trial counsel below an objective standard of reasonable representation, and (2) a reasonable probability of prejudice that but-for her trial counsel's errors, the outcome would have been different. If appellant fails to meet either prong of the *Strickland* test, it is not necessary for us to engage in an

9.

analysis of the other prong. *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), citing *Strickland* at 697.

Further, as held by this court in *State v. Jackson*, 6th Dist. Sandusky No. S-20-036, 2021-Ohio-4619, ¶ 17, '[A] properly licensed attorney in Ohio is presumed competent.' *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Tactical, strategic decisions do not constitute a meritorious basis of an ineffective assistance of counsel claim. *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995).

**{¶ 30}** Appellate courts must be highly deferential and retain a strong presumption that counsel's conduct fell within the range of reasonable professional assistance when reviewing ineffective assistance of counsel claims. *State v. Bender*, 6th Dist. Ottawa No. OT-22-019, 2023-Ohio-486 ¶ 16, quoting *Strickland,* at 689.

**{¶ 31}** In conjunction with the above, the Ohio Supreme Court affirmed in *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.2d 1185, ¶ 123, "*Counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court. State v. Treesh*, 90 Ohio St.3d 460, 739 N.E.2d 749 (2001)." (Emphasis added).

**{¶ 32}** In the first assignment of error, appellant unilaterally characterizes the fact that the investigator was not subpoenaed as something done in error, as something that

trial counsel had decided and intended to do, but nevertheless, "forgot" to do. The record is devoid of evidence demonstrative of this characterization.

{¶ 33} Contrary to the characterization of the matter upon appeal, in contemporaneously explaining the issue to the trial court when requesting the first continuance, trial counsel for appellant stated, "I am [now] seeking to have the appearance of investigator Jim Meadows ["Meadows"] to testify about his interview of * * * Sims. I did not subpoena him * * * [H]is testimony would be in the form of that Sims[,] in the course of the interview[,] stated that she did not see any [physical] contact by [appellant] against the [victim]."

{¶ 34} From the record of evidence, it can only be discerned that appellant first elected to not subpoena Meadows as a witness to testify at trial, but subsequently determined, after hearing Sims' incongruous trial testimony on the subject of physical contact, that he now wished to have trial testimony from the investigator to rebut Sims' trial testimony on the issue of physical contact. Such a scenario constitutes a tactical decision, and falls with the rubric of trial strategy.

{¶ 35} However, regardless of our conclusion that Meadows was not present due to a tactical decision to not subpoena him, untimely reconsidered after appellee's case was presented, the record reflects that the trial court nevertheless gave appellant a continuance to secure the witness, and when the witness did not voluntarily appear, the

11.

trial court granted appellant leave to recall Sims to address the discrepancy directly with her upon her recross-examination.

{¶ 36} The record reflects that during recross, Sims directly conceded her divergent statement on the issue of physical contact with the victim to Meadows, enabling the jury to weigh and consider the discrepancy, and related witness credibility implications, during the course of their deliberations, just as would have been done had the discrepancy been revealed by the investigator.

{¶ 37} On consideration of the foregoing, we find that appellant has failed to establish the first prong of *Strickland*. The record contains no convincing evidence that Meadows not receiving a subpoena to testify at trial was anything other than a tactical decision of counsel. The claim upon appeal that trial counsel had decided to subpoena the investigator, but forgot to do so, has no basis in the record of evidence.

{¶ 38} However, even assuming arguendo that we were satisfied that appellant established the first prong of *Strickland*, we would nevertheless find that appellant could not satisfy the second prong of *Strickland*. Appellant has not established a reasonable probability of prejudice that but-for her trial counsel's errors, the outcome would have been different. The record definitively demonstrates that the recross of Sims procured a direct concession of the very testimonial disparity on the issue of physical contact that would have otherwise been sought by the testimony of Meadows. Under these

12.

circumstances, appellant cannot demonstrate that the outcome of the matter would have been different. Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 39} In appellant's second assignment of error, appellant similarly contends that the trial court erred and abused its discretion in failing to grant appellant's Crim.R. 29 motion for a mistrial.

{¶ 40} Prophet presents no new or additional arguments in support of this assigned error. He presents the same arguments as those he presented in support of his first assignment of error. Namely, the absence of trial testimony from Meadows on the issue of what Sims stated to him regarding physical contact between appellant and the victim.

{¶ 41} However, appellant urges this court to review this assignment as plain error under Crim.R. 52(B). That rule states:

(B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

{¶ 42} In this case, appellant moved the trial court to declare a mistrial based upon the absence of witness Meadows. That motion was denied.

{¶ 43} Therefore, the trial court was directly confronted with the issue that is now raised before this court. Appellant has put forth no argument or supportive authority that would warrant a plain error standard of review under these circumstances. Typically, plain error review occurs if a party forfeits an objection in the trial court. *State v. Jones*,

13.

6th Dist. Wood No. WD-18-063, 2019-Ohio-3704, ¶ 20, 143 N.E.3d 1170, quoting *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 15.

{¶ 44} As held by this court in *State v. Durst*, 6th Dist. Huron No. H-18-019, 2020-Ohio-607, ¶ 46, "Review of the trial court's decision denying motion for mistrial ordinarily falls under an abuse of discretion standard. *State v. Rossbach*, 6th Dist. Lucas No. L-09-1300, 2011-Ohio-281, ¶ 39, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable." Accordingly, we will review appellant's second assignment of error pursuant to the abuse of discretion standard of review.

{¶ 45} The Ohio Supreme Court has declared that a mistrial should not be ordered in a cause simply because some error has intervened. Moreover, mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible. *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). An appellate court should only take notice of plain error under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990).

{¶ 46} In this instance, the trial court granted appellant a continuance in order to secure the appearance of Meadows. Meadows again did not appear. Regardless, the trial court granted appellant leave to recall Sims to conduct a recross-examination, during which Sims directly conceded the very point which was going to be sought through the

14.

testimony of Meadows. Thus, the jury was aware of the discrepancy in Sims' testimony on the issue of physical contact by her own admission, and thereafter was able to weigh same in the course of their deliberations.

{¶ 47} Based upon these facts and circumstances, we cannot say that the trial court's decision to deny appellant's motion for a mistrial was unreasonable, arbitrary, or unconscionable. Wherefore, we find appellant's second assignment of error not well-taken.

{¶ 48} On consideration whereof, the judgment of the Sandusky County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____
                                                        JUDGE
Christine E. Mayle, J.

Myron C. Duhart, P.J.                   _____
CONCUR.                                              JUDGE

                                        _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.