[Cite as *State v. Davies*, 2025-Ohio-261.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                             Court of Appeals No. L-24-1049

     Appellee                                          Trial Court No. CRB2300924

v.

Tonia Davies                                          **DECISION AND JUDGMENT**

     Appellant

                                 Decided:  January 24, 2025

* * * * *

Henry Schaefer, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1}  This is an appeal of the February 6, 2024 judgment of the Sylvania Municipal Court, convicting appellant, following a jury trial and a unanimous jury verdict, on one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree.  Appellant was sentenced to a 180-day jail term, with credit for time served, the balance of the time suspended, a two-year term of probation, and a mental

health assessment.  For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2}   Appellant, Tonia Davis, sets forth the following two assignments of error upon appeal:

"The court erred when it did not give a self-defense instruction.

"[Appellant's] counsel was ineffective [in not requesting a self-defense instruction]."

{¶ 3}   The following undisputed facts are relevant to this appeal.  Appellant and C.D., appellant's estranged husband and the victim in this case, are separated and in the midst of a protracted divorce.  Three minor children were born of the marriage.  In the course of the divorce proceedings, following a February, 2023 incident occurring when the children were in the possession of appellant and were located wandering alone inside a building on the University of Michigan campus in Ann Arbor, C.D. was granted full custody of the children and sole possession of the marital home.  In conjunction, appellant was granted one weekly, two-hour, supervised visitation with the children.  The visitation was only to occur with advanced notice by appellant to C.D., at a mutually agreed upon date and time, and with third-party supervision.

{¶ 4}   For context, underpinning this case is appellant's intractable, fallacious notion that C.D. is a participant in a widespread child sex trafficking operation, and in connection to same, that multiple persons and officials, including personnel of the Lucas County Domestic Relations Court and the magistrate assigned to the parties' pending

2.

divorce case, are likewise participants in the purported child sex trafficking operation and are colluding with C.D. against appellant.

{¶ 5} On Wednesday, June 21, 2023, while C.D. was on duty at his place of employment, C.D. was texted by one of his children alerting him that appellant was currently inside the family home, at a time other than a mutually agreed upon, designated time of supervised visitation. The events that followed culminated in the instant case.

{¶ 6} Upon arriving home, C.D. was initially unable to locate appellant inside of the home and, incorrectly perceiving that she had departed, C.D. began attending to household chores. After taking the garbage out and returning inside the home, C.D. encountered appellant inside of the home. C.D. instructed appellant to depart the premises as she was in direct violation of their custody and visitation orders. Appellant refused to leave and, when she was again asked to depart, she became verbally and physically aggressive against C.D.

{¶ 7} At this juncture, appellant began to strike and scratch C.D., and repeatedly kicked him in the groin. Photographs taken by the responding officers of C.D.'s injuries were viewed and submitted into evidence in the course of the jury trial. In addition, C.D. took video recordings of appellant's attack against him on his mobile phone. The recordings were likewise viewed and submitted into evidence in the course of the jury trial. The recordings affirm appellant's physical attack upon C.D.'s person, as well as her numerous attempts to knock C.D.'s mobile phone out of his hand to prevent the ongoing video recording. C.D. called 9-1-1 and requested emergency assistance.

3.

{¶ 8} Upon arrival at the scene, the responding officers reviewed C.D.'s video recordings, reviewed the court orders demonstrating appellant's full custody of the minor children and sole possession of the family home, and took photographs of C.D.'s injuries. By contrast, the officers observed that appellant had no injuries and could articulate no legitimate basis for her actions. Based upon their investigation, appellant was charged with one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree. The matter was unable to be voluntarily resolved and was set for a jury trial.

{¶ 9} On February 6, 2024, the case proceed to jury trial. Appellee first presented C.D.'s testimony. C.D. testified in detail regarding the applicable orders of the domestic relations establishing his sole custody of the children, his sole possession of the family home, and granting appellant one weekly, two-hour, supervised visitation. C.D. testified that while at work on June 21, 2023, his oldest son texted him that appellant was at the family home. It was not a designated date and time for supervised visitation. Accordingly, C.D. went home to address the matter. Upon arriving home and locating appellant, C.D. testified that, "I asked her to leave. I told her she wasn't allowed to be there and that she needed to leave * * * She did not leave * * * So after she refused to leave, I got out my phone and I started recording."

{¶ 10} C.D. testified that upon beginning to record the incident, "[Appellant] immediately attacked me, tried to grab the phone and started to wrestle it away for me. In the process, she is scratching me. She kicked me in the groin * * * This happened multiple times. She would try to get the phone away from me and attacked me in the process, and it happened * * * three or four times."

4.

{¶ 11} Appellee next presented the testimony of Officer Matt Grant ("Grant"), one of the responding police officers. Grant testified that upon arriving at the scene and speaking with C.D., he observed, "I could tell he was sweaty * * * I noticed a scratch on his right arm * * * approximately 5, 6 inches in length * * * He [further] informed me that [appellant repeatedly] kicked him in the groin."

{¶ 12} Appellee inquired of Grant, "[B]ased under review of that [domestic relations] documentation, the videos that you were shown, based on your own observations * * * based on your experience and training as a police officer, what did you do next?" Grant replied, "[I] had a meeting with another officer that was on the scene * * * and we determined that the physical aggressor in this incident * * * was [appellant]."

{¶ 13} Appellant next testified on her own behalf. Appellant acknowledged being at the premises at a time other than a mutually scheduled, supervised visitation. Appellant further acknowledged physical actions against C.D., but simultaneously denied any accountability for her actions based upon her subjective disagreement with parenting decisions of C.D. [the sole custodian parent]. The defense inquired of appellant, "Did you at any point hurt [C.D.] on purpose?" Appellant replied, "No, I'm not a violent person." The record reflects otherwise.

{¶ 14} Upon cross-examination, appellant was shown the multiple mobile phone video recordings showing her physical attacks against appellant, but she simply denied recalling the events documented by the video recordings. When asked about her acknowledged violations of the domestic relations custody and visitation orders, appellant

5.

stated that, "I am not going to follow something that a magistrate who's with a sex trafficking organization that my husband is [also] a part of is forcing to happen."

{¶ 15} The parties rested. The jury returned a unanimous verdict of guilty on the single count of domestic violence. In speaking on her own behalf prior to sentencing, appellant proclaimed, "I don't have a mental health disorder * * * My husband is colluding with [the magistrate] to create a mental health situation. He's involved in a sex trafficking operation * * * [T]his is a massive collusion event." Appellant was sentenced to 180 days of jail time, with credit for time served, the balance of the days suspended, a two-year term of probation, and ordered to undergo a mental health assessment. This appeal ensued.

{¶ 16} On appeal, appellant argues that trial counsel was ineffective in failing to request a self-defense instruction and, relatedly, that the trial court erred in not giving a self-defense instruction. Given the congruous legal premise of the assignments, they will be addressed together.

{¶ 17} As held by this court in *State v. Bender*, 2023-Ohio-486, ¶ 16 (6th Dist.),

> It is well-established that in order to demonstrate ineffective assistance of counsel, one must satisfy a two-pronged test. First, it must be shown that counsel's representation was deficient in some specific way, falling below an objective standard of reasonableness. If the first prong is satisfied, then it must be shown that, but for the demonstrated deficiency, the outcome of the case would have been different. *Strickland v. Washington*, 466 U.S. 688, 104 S.Ct. 2052, 90 L.E.2d 674 (1984). In conjunction, appellate courts must be highly deferential and retain a strong presumption that counsel's conduct fell within the range of reasonable professional assistance when reviewing ineffective assistance of counsel claims. *Id*. at 689. Further, as held by this court in *State v. Jackson*, 6th Dist. Sandusky No. S-20-036, 2021-Ohio-4619, ¶ 17, 'A properly licensed attorney in Ohio is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Tactical, strategic decisions do not constitute a meritorious basis of an ineffective assistance of counsel claim. *State v. Phillips*, 74 OhioSt.3d 72, 656 N.E.2d 643 (1995).'

6.

In conjunction, regarding self-defense, as elaborated by this court in *State v. Griffin*, 2024-Ohio-5846, ¶ 14-18 (6th Dist.),

> There are two types of self-defense in Ohio: (1) defense against danger of bodily harm, also known as non-deadly force self-defense; and (2) defense against danger of death or great bodily harm, or deadly force self-defense. *State v. Rice*, 2022-Ohio-3291, 2022 WL 4350952, ¶ 58 (7th Dist.). Griffin asserted the use of non-deadly force self-defense at trial.

> In a case involving the use of non-deadly force, an accused is justified in using force against another if (1) [s]he was not at fault in creating the situation giving rise to the affray; (2) [s]he had reasonable grounds to believe and an honest belief that * * * [s]he is in imminent danger of bodily harm, and (3) [s]he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Greer*, 2023-Ohio-103, 2023 WL 179640, ¶ 33 (6th Dist.), quoting *State v. Paskins*, 2022-Ohio-4024, 200 N.E.3d 684,¶ 48 (5th Dist.). Because each element must exist for a self-defense claim to prevail, the State can defeat a self-defense claim by disproving any one of these elements beyond a reasonable doubt. *State v. Knuff*, 175 Ohio St.3d 82, 2024-Ohio-902, 239 N.E.3d 259, ¶ 191.

> In *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, the Ohio Supreme Court clarified the burden of proof where defendant asserts a claim of self-defense under the version of the statute that became effective March 28, 2019. That is, R.C. 2901.05(B)(1) triggers the State's duty to disprove self-defense so long as there is evidence presented that tends to support that the accused person used the force in self-defense -- a burden that is not all that heavy. *Id.* at ¶ 20, 22.

{¶ 18} Accordingly, a self-defense jury instruction is required only if there is evidence that "tends to support" that the defendant used force in self-defense. *State v. Smith*, 2020-Ohio-5119, ¶ 33 (6th Dist.).

{¶ 19} As applied to the instant case, the undisputed evidence reflects that on Wednesday, June 21, 2023, without advanced notice to C.D., without the consent of C.D., without the requisite supervision, and in violation of the governing custody and visitation orders of the domestic relations court, appellant came into the family home. When

7.

instructed to leave by C.D. as her presence was in violation of the court orders, appellant refused to do so. The undisputed evidence further reflects that when C.D. began to make a video recording of the event on his mobile phone, and as captured by the recordings, appellant repeatedly struck, scratched, and kicked C.D., causing physical injuries. These injuries were verified by photographic evidence, video recordings, and further collaborated by the direct observations of the responding police officers immediately following the incident.

{¶ 20} By contrast, appellant's position is premised wholly upon her post hoc, self-serving claim that she did not intend to hurt C.D. when repeatedly striking, scratching, and kicking him, in conjunction with her subjective belief that she bears no legal culpability based upon her wholly unsupported insistence that C.D. and the domestic relations magistrate, among others, are embedded in a sex trafficking organization and are colluding against appellant.

{¶ 21} Given these facts and circumstances, we find that appellant has failed to demonstrate that trial counsel's decision, which is granted deference upon appeal and given a presumption of competence, to not request a self-defense jury instruction, was anything other than a proper tactical, strategic decision. Likewise, we find that appellant has failed to demonstrate trial court erred in not sua sponte initiating a self-defense jury instruction given ample, unrefuted evidence that appellant unilaterally initiated the incident, unilaterally committed the offense, and the offense was not committed in response to any unlawful conduct on the part of C.D.

8.

{¶ 22} On consideration whereof, we find appellant's assignments of error not well-taken. Wherefore, the judgment of the Sylvania Municipal Court is hereby affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.
_____
JUDGE

Christine E. Mayle, J.
_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.