[Cite as *State v. Loyd*, 2021-Ohio-4508.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY


State of Ohio                                            Court of Appeals No. WD-21-021

    Appellee                                        Trial Court No. 2019CR0467

v.

Christie M. Loyd                                   **DECISION AND JUDGMENT**

    Appellant                                       Decided:  December 22, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Christie Loyd, appeals the judgment entered by the Wood County

Court of Common Pleas, sentencing her to three years of community control after a jury

found her guilty of felonious assault.  For the reasons that follow, we reverse the

judgment of the trial court.

**Statement of the Case**

{¶ 2} Appellant was indicted on February 6, 2020, in a two-count indictment. Count one charged her with aggravated assault, which was a felony of the fourth degree. Count two charged her with felonious assault, which was a felony of the second degree.

{¶ 3} After plea negotiations failed, a jury trial ensued. At the commencement of the trial, the state of Ohio dismissed the charge for aggravated assault. Following the trial, appellant was found guilty on the charge of felonious assault, and, later, she was sentenced to three years of community control. Appellant appeals on the grounds that the trial court abused its discretion when it failed to grant her motion for mistrial, which was lodged in connection with remarks that were made by the prosecution during her cross-examination.

**Statement of the Facts**

{¶ 4} At the time of the offense, Danny Chandler was intimately involved with both appellant and the victim. This tripartite arrangement caused considerable friction between the two women. Events culminated on September 24, 2019, when the victim pulled her car in front of the home shared by appellant and Chandler. According to appellant, the victim sounded her horn, shouted obscenities, and stated something to the effect that she had been with Chandler "all day", while appellant was at work. After a time, appellant drove to the apartment complex where the victim was staying. Appellant and the victim encountered each other in the parking lot, and a physical altercation took place.

2.

{¶ 5} The victim's and appellant's accounts about what happened during the altercation are drastically divergent. Under the victim's version of the facts, appellant's car approached the victim aggressively as appellant entered the parking lot, and appellant and an unknown female accomplice exited the vehicle and assaulted the victim with a box cutter and a crowbar. Under appellant's version of the facts, however, it was appellant who was approached aggressively by the victim, just as appellant exited her vehicle. According to appellant, a brief fight took place between the two women, without any weapons or additional parties.

{¶ 6} Testimony by a third, disinterested, witness, one Julian Castro, largely corroborated the victim's version of events, but he additionally provided that the victim threw a bicycle at the car that appellant was driving. Although there was evidence to suggest that there were other witnesses to the altercation, no other eyewitness accounts were entered into evidence.

{¶ 7} During the state's cross-examination of appellant, the prosecutor, with some papers in his hand, said to appellant, "What if I told you that there are other written statements that corroborate Mr. Castro. Would they be lying?" Appellant's counsel objected and, while in chambers, moved for a mistrial. The trial court denied appellant's motion, but did issue a curative instruction to the jury. The cross-examination then resumed. At the conclusion of appellant's testimony, the court received questions from jurors to be asked of appellant. One of those questions was, "Are there any more eyewitness statements to corroborate Mr. Castro's statement?" Appellant's counsel

3.

renewed his motion for a mistrial, citing the fact that the jury had not adhered to the court's cautionary instruction. The trial court denied the motion a second time, after which the jury went on to find appellant guilty.

## Assignment of Error

{¶ 8} Appellant asserts the following as her sole assignment of error:

> The trial court erred to appellant's prejudice by failing to declare a mistrial for the prosecutor's improper vouching for a state's witness.

## Analysis

{¶ 9} We review a trial court's decision denying a mistrial under an abuse of discretion standard. *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). "A mistrial is only proper 'when the ends of justice so require and a fair trial is no longer possible.'" *State v. Cantrill*, 6th Dist. Lucas No. L-18-1047, 2020-Ohio-1235, ¶ 47, citing *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). Mistrials are "an extreme remedy." *Cantrill* at ¶ 47, citing *State v. Rossbach*, 6th Dist. Lucas No. L-09-1300, 2011-Ohio-281, ¶ 39, citing *Franklin* at 127. Where a motion for mistrial is based on claims of prosecutorial misconduct, an appellate court "must undertake a due process analysis to determine whether the conduct of the prosecutor deprived the defendant of [her] due process right to a fair trial." *State v. Saunders*, 98 Ohio App.3d 355, 358, 648 N.E.2d 587 (6th Dist. 1994), citing *State v. Johnson*, 39 Ohio St.3d 48, 60, 529 N.E.2d 898 (1988). Our focus, when conducting this analysis, is on "the fairness of the trial, not the culpability of the prosecutor." *State v. Talley*, 2016-Ohio-8010, 74 N.E.3d 868, ¶ 33

4.

(6th Dist.), citing *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "In determining whether prosecutorial misconduct occurred, we must first consider whether remarks were improper, and if we find improper remarks, whether those remarks prejudiced the accused's substantial rights." *Cantrill* at ¶ 48, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 231, citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984).

{¶ 10} Here, appellant argues that the prosecutor, during his cross-examination of appellant, improperly vouched for the testimonies of the victim and witness Castro. "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Davis* at ¶ 232, citing *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117. The law is clear that "[i]t is improper for a prosecutor to vouch for the credibility of a witness at trial." *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 96. Appellant asserts that the prosecutor, while cross-examining appellant, implied knowledge of facts outside of the record and, by so doing, bolstered Castro's and the victim's credibility -- at the expense of appellant's -- and, at the same time, he interjected his own credibility into the proceedings.

{¶ 11} The relevant sequence of events began with the prosecutor's cross-examination of appellant, where he asked appellant about discrepancies between her testimony and that of witness Julian Castro, who had previously testified.

5.

Q Yesterday afternoon as we held the jury later than we had said and the State was allowed to put Mr. Julian Castro on the stand, you were sitting here, right?

A Correct. I was.

Q As you sit here and listen to yourself speak, do you realize that every single thing you said matches absolutely nothing to his story?

A I do.

Q Why is that? Is Julian Castro lying?

A I'm not going to say he's lying. But he clearly saw something that happened before.

Q So he stated it was on the same day, at the same time, at the same place. Other than that he is out of his mind, he's out of line or he ought to be evaluated?

[Defense Counsel]: Objection.

THE COURT: Wait.

A I'm not saying –

THE COURT: Wait. Wait. Wait. [Defense counsel].

[DEFENSE COUNSEL]: It's a compound question. It's argumentative because the prosecutor is putting words into her mouth about he was lying. She's already said she doesn't think he was lying.

THE COURT: Sustained.

BY [THE PROSECUTOR]:

Q  What do you think were the reasons between the different, dramatic differences between the stories?

A  Well, he did mention I was taking a parking spot of his.  And clearly I didn't park in a parking spot.

Q  I don't remember saying anything of the such.

A  Yeah.  He said he was going to park in a parking spot that he normally parks in.

Q  Do you remember him saying he was following you in his vehicle?

A  I do.

Q  Do you remember him saying you ran up on the curb and it appeared to him that you were trying to hit [the victim]?

A  I heard him say that, yes, I did.

Q  Is he lying?

A  I don't know what he's doing.

Q  You heard him say that someone got out and got a tire iron, right?

A  I did.  I heard him say that, too.

Q  Is he lying about that?

A  I can't say whether he's lying or not.

Q  Did [the victim] throw a bike at your vehicle?

A No, she did not.

Q So is he lying about that, too?

A She didn't throw and hit my car. If she threw a bike and hit my car, I would have had a dent or something on there.

\* \* \*

Q We've spoken for a few minutes. So I thought maybe this would be easier to answer. So I'm going to ask it one more time. Can you explain how everything you've said is different from Mr. Castro's testimony?

A The fact that I rolled up on the curb trying to hit [the victim], her throwing the bike at my car, and the second person.

Q What if I told you that there are other written statements that corroborate Mr. Castro. Would they be lying?

[DEFENSE COUNSEL]: Objection

THE COURT: s Let's get in the other room.

The in-chambers discussion took place as follows.

THE COURT: [Defense Counsel].

DEFENSE COUNSEL: Your Honor, we've been over this time and time again that this other testimony is not admissible unless she appears here. Do I need to re-cite the case law for the court involving the rules of hearsay and rights of confrontation? The State of Ohio has presented evidence to the jury that there's other witness statements that we can't

cross-examine, that we can't talk to, that's going to corroborate Castro's testimony. That was a deliberate attempt of the State to circumvent the Court's order. And we ask for a mistrial.

THE COURT: [Prosecutor].

THE PROSECUTOR: I held my personal sheets where I made my own notes. You wanted to talk about hearsay. We've spent three hours of [defense counsel] using hearsay. I can fake whatever I want and ask her whether or not something exists. And I can ask her again why is it nobody else has the same story you do.

Those are my own personal notes. I didn't present anything to the jury. They can't see it. It's in red and black. Those are my handwritten notes. I didn't present any evidence to the jury.

THE COURT: Let's stop for a minute. You asked the question. The question stated we have other statements from other people that corroborate.

[THE PROSECUTOR]: I said are you aware. So she can say I'm not aware of any other statements. She's opened the door.

THE COURT: But you are implicitly saying that you have them.

[THE PROSECUTOR]: Of course. This entire line of hearsay questioning is trying to imply something.

THE COURT: Understand this * * *I want to be very careful with this. The defendant has a right, a Sixth Amendment right about confrontation. It's a little bit different than the hearsay rule.

[THE PROSECUTOR]: Then I can bring the exact name, are you aware of who Sarah Jahns is. Was Sara Jahns that day there. Would she tell the same story? I'll be happy to use name, place, story. I'll be happy to go down that road with her.

[DEFENSE COUNSEL]: That doesn't make her available and for the record, the prosecutor held up the statements in his hand as he directed his questions to her.

[THE PROSECUTOR]: No. Those were notes.

[DEFENSE COUNSEL]: I'm sorry. Everybody on that jury knows what's going on. He had in hand these statements, holding them up saying there's people here that are going to disagree with your testimony. That's what he was doing. Everybody on the jury saw that. They know that. Now they not only know there's people out there that aren't going to be here and testify that are going to corroborate the State's case.

THE COURT: The objection will be sustained. I will deny the mistrial. I will tell the jury that they must ignore the statements of the prosecutor as if they were never said.

Addressing the jury, the trial court instructed, "Ladies and gentlemen of the jury, the statements that just came from the prosecutor are stricken from the record and to be assumed by you that they were never said." We agree with the trial court and find that the state improperly vouched for the victim's credibility by implying knowledge of evidence outside the record which supported her version of events. *Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 231.

{¶ 12} Having determined that the state's conduct was improper, we must determine whether "those remarks prejudiced the accused's substantial rights." *Cantrill*, 6th Dist. Lucas No. L-18-1047, 2020-Ohio-1235, at ¶ 47. Appellant argues that the jury's failure to disregard the state's prejudicial conduct, despite being instructed that the conduct was not evidentiary and could not be considered, denied her a fair trial. We agree.

{¶ 13} Generally, a curative instruction is presumed to be an effective remedy for the introduction of improper statements during the course of a trial. *See State v. Zeurn*, 32 Ohio St.3d 56, 61, 512 N.E.2d 585 (1987). Moreover, a jury is presumed to follow the court's curative instructions concerning improper comments. *See State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 93 (stating that the jury can be presumed to have followed the court's instructions to disregard testimony). This presumption can be rebutted, however, by a showing that "the evidence could not have been ignored and that serious prejudice likely occurred." *State v. Westwood*, 4th Dist. Athens No. 01CA50, 2002-Ohio-2445, ¶ 42 (citation omitted).

11.

{¶ 14} Here, the record shows that shortly after appellant's testimony concluded, the court told the jury to write any questions they might have on a piece of paper and to pass the paper to the bailiff. Back in chambers, the trial court read to the prosecutor and defense counsel the following question that had been submitted by the jury, "Are there any more eyewitness statements to corroborate Mr. Castro's statement?" At this point, defense counsel renewed the motion for mistrial and the prosecutor acknowledged that the jury was "not following the Court's instructions." The court denied the renewed motion. Notably, the trial court did not renew its instruction to disregard the state's previously-stricken question or inform the jury as to why the question was not asked.

{¶ 15} Later, the trial court instructed the jury that "[e]vidence does not include statements which were stricken by the Court or which you were instructed to disregard, which the Court did at one point during this trial," and that "[s]uch statements are not evidence and must be treated as though you never heard them." The trial court also gave a general instruction to the jury that it "should not draw any conclusion from the fact that your question was or was not asked of any particular witness." The trial court did not, however, give the jury any specific instruction regarding its unasked question which was directly contrary to the previously-given curative instruction. Therefore, at the time it retired to deliberate, the trial court had not specifically addressed the jury's continued consideration of the improper statements the trial court explicitly instructed it to disregard. For these reasons, we find that appellant has identified sufficient evidence to rebut the presumption that the jury followed the trial court's instruction. *See State v.*

12.

*Doren,* 6th Dist. Wood No. WD-06-064, 2009-Ohio-1667 (holding that a jury's continued inquiry regarding conduct it was ordered to disregard rebuts the presumption that the jury followed the trial court's curative instruction).

{¶ 16} Further, we find that the jury's failure to follow the trial court's instruction prejudiced appellant's right to a fair trial. In the instant case, where appellant and the victim had opposing stories about the circumstances of the fight that took place between them, and where the defense proposed that Castro's testimony in support of the victim's story may, in fact, have referred to an altogether different confrontation, the critical issue was the jury's determination of the witnesses' credibility. It is with this situation in mind that we consider the misconduct allegations, because improprieties affecting the jury's credibility determinations were most likely to have prejudiced appellant. *See State v. Cody*, 8th Dist. Cuyahoga No. 77427, 2002-Ohio-7055, ¶ 23 (where the critical issue was witness credibility, misconduct affecting the jury's credibility determinations were deemed most likely to have prejudiced the defendant).

{¶ 17} The prosecutor, in suggesting that there existed other written statements that corroborated the testimony of Mr. Castro, clearly engaged in improper vouching that bolstered Castro's and the victim's testimony by implying knowledge of facts outside the record. *See Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3dd 841, at ¶ 96; *Davis* at ¶ 232. And despite the trial court's curative instruction, the jury demonstrated sustained curiosity about the existence of additional eyewitness statements that would corroborate Mr. Castro's statement. Given that the final jury instructions on the matter

13.

were as nonspecific as the initial, clearly ineffective, curative instruction, we find that the jury's failure to disregard the prosecutor's improper statement resulted in substantial prejudice to appellant, such that a fair trial was no longer possible. *See Westwood* at ¶ 42. Therefore, we are compelled to find that the trial court abused its discretion by refusing to declare a mistrial. *Cantrill*, 6th Dist. Lucas No. L-18-1047, 2020-Ohio-1235, at ¶ 47. Appellant's assignment of error is found well-taken.

{¶ 18} For all of the foregoing reasons, the judgment of the Wood County Court of Common Pleas is reversed. This matter is remanded for proceedings consistent herein. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                      _____
                                            JUDGE

Gene A. Zmuda, P.J.                    

                                             _____
Myron C. Duhart, J.                     JUDGE
CONCUR.

                                             _____
                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.