[Cite as *State v. Mason*, 2024-Ohio-3042.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                  Court of Appeals No.  WD-23-016

        Appellee                 Trial Court No. 2022 CR 062

v.

Deanna J. Mason            **DECISION AND JUDGMENT**

        Appellant              Decided:  August 9, 2024

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**MAYLE, J.**

**{¶ 1}** Following a jury trial, defendant-appellant, Deanna J. Mason, appeals the March 2, 2023 judgment of the Wood County Court of Common Pleas, convicting her of involuntary manslaughter, corrupting another with drugs, and trafficking in a fentanyl-related compound, all of which merged for sentencing purposes.  For the following reasons, we affirm.

## I. Background

{¶ 2} Deanna Mason was charged with the following crimes in connection with the August 8, 2021 drug overdose death of T.A.: (1) involuntary manslaughter, a violation of R.C. 2903.04(A) and (C), a first-degree felony; (2) corrupting another with drugs, a violation of R.C. 2925.02(A)(3) and (C)(1), a second-degree felony; and (3) trafficking in a fentanyl-related compound, a violation of R.C. 2925.03(A)(1) and (C)(9)(a), a fifth-degree felony. The case was tried to a jury beginning January 24, 2023. Numerous witnesses testified, including the victim's mother, D.M.; the victim's ex-boyfriend, Jo.V.; Deputy Michael Meyers and Detective Sergeant Patrick Mormile of the Wood County Sheriff's Department; Logan Schepeler and Tyler Tomlins, forensic scientists employed by the Ohio Bureau of Criminal Investigations; Robyn Shinaver, the laboratory director of the Lucas County Coroner's Toxicology Laboratory; and Jeffrey Hudson, M.D., a forensic pathologist and deputy Lucas County Coroner.

### A. The Evidence Presented at Trial

{¶ 3} According to the evidence at trial, T. A. was living with her ex-boyfriend, Jo.V, in Bowling Green, and Jo.V.'s cousin, Y.R. T.A. was addicted to Percocet and had suffered a nonfatal drug overdose in Spring of 2021. At approximately 3:30 p.m. on August 8, 2021, Jo.V. came in from mowing the lawn to find T.A. unconscious on the bathroom floor. He called 9-1-1 and reported that she had overdosed. With assistance from the 9-1-1 operator, Jo.V. attempted CPR until emergency personnel arrived.

{¶ 4} Deputy Meyers of the Wood County Sheriff's Office was dispatched to the residence. EMS workers were already there administering CPR. Deputy Meyers

2.

performed a plain-view inspection of the premises and saw no evidence of drugs, but he saw two phones on the bathroom sink. T.A. was transported to the hospital, and Deputy Meyers cleared the scene.

{¶ 5} About an hour later, the Wood County Coroner's office advised Deputy Meyers that T.A. had died of a suspected drug overdose. Deputy Meyers contacted Detective Mormile and requested that he initiate an investigation into T.A.'s death. The two returned to the home around 6:00 p.m., and with Jo.V.'s permission, they searched T.A.'s bathroom and bedroom. The two phones Deputy Meyers had observed earlier were no longer in the bathroom, but they found three phones in T.A.'s bedroom. They also found a baggie with an unknown white powder in it, a prescription bottle for generic Ambien, straws that had been cut, a pill grinder, and marijuana paraphernalia. The baggie was sent for chemical and DNA testing by BCI and warrants were obtained to search the content of the phones.

{¶ 6} One of the phones contained narcotics-related text messages between T.A. and a contact labeled "Deanna." On August 6, 2021, two days prior to T.A.'s death, T.A. texted with "Deanna," requesting "power," which Detective Mormile surmised was a typographical error that was intended to say "powder"—i.e., cocaine, fentanyl, heroin, or the like. Through further investigation, Detective Mormile determined that the phone number associated with contact "Deanna" belonged to Deanna Mason.

{¶ 7} Detective Mormile visited Mason at her home in Bowling Green, which he recorded. The recorded interview was played for the jury at trial. Mason confirmed that

3.

she was the "Deanna" listed in T.A.'s phone, and acknowledged that she had received the text message from T.A. requesting "power." Like Detective Mormile, Mason interpreted this to mean that T.A. wanted a powdered narcotic, specifically cocaine. Mason told Detective Mormile that she knew T.A. to be an opiate user, and that after T.A.'s recent overdose, Mason refused to continue to provide drugs to her. Contradictorily, however, she admitted that she packaged approximately 0.7 grams of cocaine for T.A., which Jo.V. picked up from Mason at the home she shared with her boyfriend, Je.V., Jo.V.'s brother. (At trial, Jo.V. initially denied driving to Mason and Je.V.'s home on the morning of August 8, 2021, but eventually stated that he drove T.A. there and remained in the car while T.A. went into the home.) Mason told the detective that she had used cocaine from the same batch and had experienced a normal high from it. She also claimed that she had recently lost her phone.

{¶ 8} After interviewing Mason, Detective Mormile received phone records from Verizon Wireless relative to T.A.'s phone number. Additional text messages were recovered, including one from 10:45 a.m. on August 8, 2021, approximately five hours before T.A. died. In the 10:45 a.m. message, Mason told T.A.: "That is .7 because of the 10 remember … but be careful [T.A.] that shit is way stronger." This message was consistent with Mason's statement to Detective Mormile that she had sold T.A. 0.7 grams of powdered narcotics on the morning of August 8, 2021.

{¶ 9} BCI testing revealed that the baggie recovered from T.A.'s bedroom contained 0.34 grams of paraflourofentanyl, acetyl fentanyl, and fentanyl. No cocaine

4.

was found in the powder that was tested. The baggie was also tested for touch DNA. There was a mixture of DNA, with only two contributors: (1) a minor DNA profile consistent with T.A., and (2) a major DNA profile consistent with Mason. The estimated frequency of occurrence of Mason's major DNA profile was rarer than one in one trillion unrelated individuals.

{¶ 10} Consistent with BCI's testing of the powder, toxicology tests conducted by the Lucas County Coroner's Office in connection with T.A.'s autopsy determined that parafluorofentanyl—a more potent analog of fentanyl—was present in T.A.'s system. The amount of fentanyl in T.A.'s system at the time of her death was six times greater than the amount considered to be toxic. The coroner concluded that T.A.'s cause of death was combined drug toxicity of fentanyl, parafluorofentanyl, and Zolpidem, and but for the fentanyl and parafluorofentanyl in T.A.'s system, T.A. would have survived. T.A.'s manner of death was ruled an accident.

{¶ 11} Mason subpoenaed Jo.V.'s brother, Je.V., to testify, but Je.V.'s attorney informed the court and the parties that Je.V. would be asserting his Fifth Amendment right against self-incrimination. Because of this, the trial court informed the jury that Je.V. was "unavailable."

### B. Issues with Jurors

{¶ 12} On the first day of trial, while Jo.V. was testifying on behalf of the State, Jo.V. made statements that could be deemed inculpatory of his participating in a crime. The trial judge became concerned that Jo.V. did not have counsel present to advise him

5.

of his Fifth Amendment rights. On the second day of trial, attorney Scott Coon appeared in court on Jo.V.'s behalf. Upon seeing Coon, Juror No. 8 brought to the court's attention that she was involved in civil litigation and Coon represents the opposing party. The judge considered whether he should deem Juror No. 8 an alternate (contrary to his usual practice of randomly selecting alternate jurors) or remove her from the panel altogether. In the end, he opted to question her about whether she could remain fair and impartial. She said that she could. The court decided not to excuse her, and defense counsel indicated that he was satisfied with that result.

{¶ 13} On the third day of trial, just before the State rested, Juror No. 6 disclosed to the court that she looked in her high school yearbook and realized that she and Mason attended high school together. At one point during high school, Mason allegedly threatened to break Juror No. 6's leg. The parties agreed with the trial judge that Juror No. 6 should be excused.

{¶ 14} Discussion returned to whether Juror No. 8, who was still on the panel, should be designated the alternate based on her earlier issue, rather than having a "random draw" for the alternate. Counsel for the State argued that Juror No. 8 should be designated an alternate, but defense counsel preferred "to commit [the matter] to fate."

{¶ 15} Following some additional discussion with counsel, the trial judge took a recess and went into the jury room, where the jury was waiting. He would later tell the parties he went into the jury room to apologize for how long the jury had to wait and to thank them for their patience. While he was speaking to them, Juror No. 8 volunteered

6.

(in front of the other jurors) that her five-year-old son asked her if they had found the defendant guilty, and she told him "not yet."

{¶ 16} Upon returning to the courtroom, the trial judge told counsel about his exchange with Juror No. 8:

> THE COURT: Earlier the State was asking that I excuse [H.B.], who is juror number 8 as alternate. The Court rejected that because it was said that [H.B.] came back here and made comments that indicated she would be fair and objective. Earlier … I went back to talk to the jury merely to say, please understand that – I said something along the lines of, I'm sorry for the length of time – for the delay, we are trying to address issues. I appreciate your patience.
>
> I asked them, are you doing okay, is everybody feeling fine? Unsolicited, that particular juror said to me, oh, my son came to me last night, 5 year old son and said, did you find the defendant guilty? And she responded no, not yet.
>
> I'm telling you that because you've objected to her being named as an alternate. You need to have full information. I don't know how you feel about that or don't feel about that. Go ahead.
>
> [DEFENSE COUNSEL]: I appreciate the Court filling both counsel in on that. Based on that comment, I will reconsider my insistence that we leave it to the fates. I think we have additional information now that suggests that she may have formed an opinion. I do not fault her for responding to her child, but she has, in fact, spoken about it with – outside of the parameters of the Court's admonishments and instructions.
>
> THE COURT: And in front of the jury.
>
> [DEFENSE COUNSEL]: This was in the jury room; is that right?
>
> THE COURT: Yes.

{¶ 17} Mason was brought into the meeting and the discussion continued. The trial court repeated the facts of the situation, and then told her:

7.

THE COURT: And so I would like you to have a conference with your counsel to see whether or not there's going to be an agreement on a juror to be designated as the alternate or if there's going to be some objection to this person serving as a juror or some other matter related to that, or if you want to submit it to random draw in that regard.

{¶ 18} Defense counsel inquired:

[DEFENSE COUNSEL]: Judge, could I have a point of clarification? If juror number 8 is designated as the alternate, she would be excused, presuming everyone returns healthy and ready to go, she would not participate in the deliberations, correct?

THE COURT: That's right.

{¶ 19} Mason spoke with her attorney off the record, and when defense counsel returned, he requested a mistrial. The following discussion ensued between the trial court and counsel for the parties:

[DEFENSE COUNSEL]: Judge, under the circumstances, I'll make a motion that the Court declare a mistrial based upon juror number 8 essentially violating the Court's admonitions to not make a decision on the outcome of the case prior to the conclusion of the evidence. This was made before the defendant rested. She has, in some sense, infected the panel with her comment. My understanding is this comment was made in the presence of the entire jury. So we submit that for the Court's consideration and to get that on the record. If the Court declines to grant that motion, we would ask that the juror be declared the alternate rather than selecting the alternate by lot.

THE COURT: Thank you very much. State?

THE STATE: Judge, we'd ask the Court to overrule the motion for a mistrial at this time. That seems like an extraordinary remedy for what sounds like a comment made in passing that we don't even necessarily know the context of how the "not yet" comment was phrased. It may have been, we're not done yet, we're not finished yet. There's no indication that other jurors are going to somehow deliberate differently based on that comment, we are confident they will follow the Court's instructions regarding burden of proof and not formulating an opinion of the case prior

8.

to the completion of the evidence of the presentation. We ask the Court to overrule the motion for a mistrial.

We have no issue with counsel's request, certainly it seems reasonable to make number 8 the alternate.

**{¶ 20}** Ultimately, the trial court determined that "the most appropriate thing to do" was to designate Juror No. 8 an alternate. After closing arguments, the trial court provided instructions to the jury, named Juror No. 8 as the alternate, then excused Juror No. 8 from further service.

### C. The Verdict

**{¶ 21}** The jury found Mason guilty of all counts. The convictions merged for purposes of sentencing, and the State elected to have her sentenced for involuntary manslaughter. The court imposed a stated definite prison term of six years and an indefinite term of nine years. Mason appealed. She assigns one error for our review:

The trial court abused its discretion by failing to grant appellant's motion for a mistrial based on juror misconduct.

### II. Law and Analysis

**{¶ 22}** Mason argues that the trial court abused its discretion when it denied her motion for a mistrial. She claims that Juror No. 8's statements to the trial judge suggest that she violated her oath by (1) prematurely forming an opinion as to Mason's guilt or innocence, and (2) discussing the case with someone outside of the jury. Because her statements were made in front of the other jurors, Mason maintains that it was incumbent on the trial court to investigate the extent of Juror No. 8's misconduct and determine

9.

whether it tainted the other jurors. Mason insists that because the trial court failed to adequately investigate and address Juror No. 8's misconduct and its effect on the other jurors, prejudice must be presumed.

{¶ 23} The State responds that Juror No. 8's statements were "the paragon of innocence." It maintains that Mason bears the burden of showing prejudice caused by the alleged misconduct, and no prejudice occurred here because the juror was named an alternate and did not deliberate. Moreover, the State insists that any error—in the trial court's failure to probe the other jurors or in its decision denying the motion for mistrial—was harmless. It contends that because Mason's guilt was overwhelming and uncontroverted, no reasonable jury would have acquitted Mason, thus the outcome would have been no different irrespective of who was seated on the jury.

{¶ 24} We review a trial court's decision denying a motion for mistrial, including one premised on juror misconduct, under an abuse-of-discretion standard. *State v. Loyd*, 2021-Ohio-4508, ¶ 9 (6th Dist.), citing *State v. Sage*, 31 Ohio St.3d 173, 182 (1987); *State v. Wilson*, 2017-Ohio-1175, ¶ 12 (4th Dist.). "A mistrial is an extreme remedy." *State v. Carter*, 2014-Ohio-5212, ¶ 16 (6th Dist.). A mistrial "'need be declared only when the ends of justice so require and a fair trial is no longer possible.'" *State v. Knuff*, 2024-Ohio-902, ¶ 150, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991).

{¶ 25} Where juror misconduct is alleged, "[g]enerally, we defer to the trial court's exercise of its discretion because it is in the best position to determine if the jury has been compromised or whether appellant was denied a fair trial." *Scott* at ¶ 20, citing

10.

*State v. Ahmed,* 2004-Ohio-4190, ¶ 92. In analyzing a case of alleged juror misconduct, it must be determined "(1) whether misconduct actually occurred and (2) whether the misconduct materially prejudiced the defendant's substantial rights." *State v. Morris*, 2011-Ohio-6594, ¶ 28 (9th Dist.).

## A. Juror Misconduct

{¶ 26} The Sixth Amendment and Due Process Clause of the Fourteenth Amendment to the United States Constitution protect the right to a trial by a fair and impartial jury. *Scott* at ¶ 38. The jury's verdict must be based only on evidence and argument in open court. *State v. Brown*, 2021-Ohio-1674, ¶ 31 (6th Dist.). A juror violates his or her duty by communicating about the case outside the courtroom or jury room. *State v. King*, 10 Ohio App.3d 161, 165 (1st Dist. 1983). It is also misconduct for a juror to form an opinion as to guilt or innocence before all of the evidence is presented. *State v. Paskins,* 2022-Ohio-4024, ¶ 81 (5th Dist.), citing *State v. Taylor*, 73 Ohio App.3d 827, 831 (1991).

{¶ 27} Here, Juror No. 8's comment to the trial judge—that her son asked her if the jury had found the defendant guilty, to which she responded "not yet"—suggests both that the juror spoke about the case outside the courtroom or jury room *and* that she prematurely formed an opinion about Mason's guilt or innocence before all the evidence was presented. Recognizing that this was problematic, the trial court designated Juror No. 8 an alternate juror, thereby ensuring that she would not be involved in determining Mason's guilt or innocence. This was an appropriate step. *See Paskins* at ¶ 82 ("[T]he

11.

trial judge is in the best position to ascertain the nature of the alleged jury misconduct and to fashion the appropriate remedy if the conduct did occur.")

{¶ 28} Mason urges, however, that the trial court should have further investigated whether the juror's remarks, together with the lack of any admonition to the jury to disregard such remarks, "tainted the rest of the panel." We address this claim in the next step in our analysis: whether the misconduct materially prejudiced the defendant's substantial rights such that a fair trial was no longer possible, and reversal is required.

## B. Prejudice

{¶ 29} "When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment." *State v. Reynolds*, 2001-Ohio-3156, * 21 (7th Dist.). Nevertheless, the Ohio Supreme Court has made clear that "'[t]here is no *per se* rule requiring an inquiry in every instance of alleged [juror] misconduct.'" *State v. Adams*, 2015-Ohio-3954, ¶ 194-195, quoting *State v. Sanders,* 92 Ohio St.3d 245, 253 (2001), quoting *United States v. Hernandez,* 921 F.2d 1569, 1577 (11th Cir. 1991). It has also repeatedly rejected the proposition "that *all* juror misconduct is rebuttably presumed to be prejudicial." (Emphasis in original.) *Adams* at ¶ 195. Rather, the complaining party must demonstrate prejudice. *Id.*

{¶ 30} Mason contends that here, it was not sufficient to merely designate Juror No. 8 an alternate. Rather, she claims, the court had a duty to conduct a hearing to

12.

determine whether the other jurors may have been tainted by hearing Juror No. 8's remarks.

{¶ 31} As an initial matter, this incident reinforces the dangers that are inherent when a trial judge has informal conversations with the jury outside the presence of the parties. *See, e.g., State v. Brown,* 2023-Ohio-4452, ¶ 16 (6th Dist.), *motion for delayed appeal granted,* 2024-Ohio-1832 (where trial judge "in an attempt to just be congenial" talked to the jurors by himself, ultimately leading one juror to ask a question relating to questioning of witnesses). Ex parte communications have the potential to take an unintended direction, leading many appellate courts to recognize the hazard involved with such communications. In *State v. Wilhelm*, 2004-Ohio-5522, ¶ 57-59 (5th Dist.), for example, the trial judge's ex parte discussion with the jury foreman inadvertently led to "a supplemental instruction to the foreman relating to the jury's obligation to return a verdict," and resulted in reversal on appeal. However well-intended, trial judges should not speak with jurors without counsel and the defendant present.

{¶ 32} Having said this, while we agree with Mason that to allay her concerns that the other jurors may have been tainted by the statements made by Juror No. 8—and to ensure that the others had not formed a conclusion concerning guilt or innocence without hearing all the evidence—the best course of action would have been to voir dire the individual jurors. Problematically, however, Mason did not request that the individual jurors be questioned.

13.

{¶ 33} In *State v. Sanders*, 92 Ohio St.3d 245, 248-49 (2001), a member of the venire made statements that the defendant claimed biased the other jurors. The court observed that nothing in the record indicated that the statements at issue biased the other veniremen. It explained that "[t]he usual way to find out whether a venireman harbors bias is voir dire, and [the defendant] could have asked that the trial court either question the other veniremen on this point, or permit the parties to do so." *Id.* Because the defendant failed to do so, the court declined to presume that the other veniremen were biased by hearing the remarks at issue.

{¶ 34} Similarly, in *State v. Gaffin*, 2017-Ohio-2935 (4th Dist.), the defendant did not move for a mistrial, but he argued on appeal that his right to a fair trial was violated because the trial court did not examine the remaining jurors to determine whether they were affected by the excused juror's misconduct. The appellate court found that only a plain-error review was warranted because the defendant never asked the trial court to examine the remaining jurors. It found no plain error.

{¶ 35} And in *State v. Miller*, 2000 WL 1369918 (2d Dist. Sept. 22, 2000), there was concern that jurors overhead the prosecutor call the defendant a pervert. Although the appellate court recognized that the trial judge had a duty to investigate the matter, it emphasized that the defendant never requested that the court voir dire the members of the jury, thus he waived error in this regard.

{¶ 36} As in *Sanders, Miller,* and *Gaffin*, Mason never requested that the court voir dire the members of the jury. And even though we disagree with the State that Juror

No. 8's comment was "the paragon of innocence," neither was it so egregious that the other jurors couldn't help but be infected by it. The ideal solution would have been for the court to question Juror No. 8 and examine the remaining jurors to ensure that none of them had yet reached a conclusion about Mason's guilt or innocence. Mason did not request that the court do so, however. The only option she presented to the court was a mistrial or acquiescence to Juror No. 8 being designated an alternate. Where a defendant fails to express dissatisfaction with the trial court's handling of alleged jury misconduct, he waives all but plain error. *State v. O'Neil,* 2024-Ohio-512, ¶ 41 (11th Dist.).

{¶ 37} Plain error is error that affects substantial rights. Crim.R. 52(B). Plain error should be found "only in exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.,* citing *State v. Long*, 53 Ohio St.2d 91, (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *Id.,* citing *Long* at paragraph two of the syllabus.

{¶ 38} There is nothing in the record to indicate that the statement at issue biased the other jurors. Moreover, there was no assertion that Juror No. 8 conducted her own investigation or research or was subject to outside influence, her comment was made just before the parties rested, and the juror was removed from the panel before deliberations began. Under the circumstances here, and given that counsel never asked the court to voir dire the panel, we will not presume that the other jurors were tainted by hearing Juror No. 8's remark. We find that the trial court did not commit plain error by

dismissing Juror No. 8 and not examining the other jurors to ensure that they were not tainted.

{¶ 39} Having refused to presume that the other jurors were tainted by Juror No. 8's remarks and declining to find plain error in the trial court's failure to voir dire the jury, we now turn to the heart of the assignment of error here: the trial court's denial of Mason's motion for mistrial. Again, a mistrial should be declared only when the ends of justice so require and a fair trial is no longer possible. If we cannot say that Mason suffered prejudice due to juror misconduct, it follows that we cannot say that the ends of justice required the trial court to declare a mistrial. *See O'Neil* at ¶ 50 ("Without a predicate finding of juror misconduct, there was no basis for the trial court to declare a mistrial."). As such, we find no abuse of discretion in the trial court's denial of Mason's motion for a mistrial.

{¶ 40} Accordingly, we find Mason's assignment of error not well-taken.

### III. Conclusion

{¶ 41} Although Juror No. 8's remarks to the trial judge during his ex parte meeting with jurors suggest that she did not strictly adhere to the court's instructions not to discuss the case outside of the jury room and not to form an opinion as to guilt or innocence until all evidence was presented, we find no reversible error here. The trial court ensured that the juror would not participate in deliberations by designating her an alternate juror. While it may have been prudent to hold a hearing to determine whether Juror No. 8 made additional remarks or the other jurors were affected by Juror No. 8's

16.

remarks, Mason did not request that the court do so.  Rather, she moved for a mistrial, or in the alternative, to have Juror No. 8 designated an alternate.  Because we find no plain error in the trial court's failure to voir dire the remaining jurors, we also find that the trial court did not abuse its discretion when it denied Mason's motion for a mistrial.  We find her sole assignment of error not well-taken.

{¶ 42} We affirm the March 2, 2023 judgment of the Wood County Court of Common Pleas.  Mason is ordered to pay the costs of appeal under App.R. 24.

Judgment affirmed.


A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.                      _____
                                                                JUDGE

Thomas J. Osowik, J.
CONCURS AND WRITES                 _____
SEPARATELY.                                             JUDGE

Myron C. Duhart, J.
DISSENTS AND WRITES
SEPARATELY.


**OSOWIK, J., concurring:**

{¶ 43} I would agree with the majority opinion in affirming the decision of the trial court.  However, I write separately to express my opinion on the juror conduct in this case.

{¶ 44} At the outset, the trial court seemed completely unmindful of the frightening perils that linger behind any closed door. Anytime a trial court intrudes upon the sanctity of the jury room, a hidden minefield of unimaginable questions and statements about the underlying case is automatically triggered to explode, giving way to potentially catastrophic results.

{¶ 45} The absence of the defendant and counsel sometimes elevates extraneous discussion under these circumstances to reversible error without the showing of actual prejudice.

{¶ 46} Nevertheless, since the trial court itself chose to open this door, we are compelled to engage in an analysis to determine if the following statement made by a juror to the trial court in the presence of other jurors and the court's actions and inactions has resulted in reversible error:

> "..... oh, my son came to me last night, 5 year old son and
>
> said, did you find the defendant guilty? And she responded
>
> no, not yet."

{¶ 47} Appellant argues that this statement made in the presence of other jurors somehow contaminated the ability of the entire veniremen to formulate an independent opinion so as to be deprived of due process. He further argues that prejudice must be presumed and a mistrial should have been granted. Appellant also asserts that the trial court should have at least inquired of the entire jury panel to determine any impact on the jury.

18.

**{¶ 48}** The undisputed facts establish that Juror #8 was designated as an alternate and ultimately was a not a member of the jury when it went into deliberations.

**{¶ 49}** There were no objections raised to this remedy by either the state or defendant.

**{¶ 50}** While I disagree with the majority opinion that the remark by Juror #8 concerning her response to her five-year-old child's question was juror misconduct, any argument in this regard has been waived. *State v. Miller*, (2d Dist. Sept. 22, 2000). Since the objection was waived, plain error review is the only examination that is warranted by this court. *State v. Gaffin*, 2017-Ohio-2935 (4th Dist).

**{¶ 51}** However, appellant has not argued plain error before this court and we are not required to address arguments that have not been sufficiently presented for review. If an argument exists that can support an assignment of error, it is not this Court's duty to root it out. *State v. Shanklin*, 2014-Ohio-5624, ¶ 31 (3d Dist.), citing *State v. Raber*, 2010-Ohio-4066, ¶ 30 (9th Dist.). An appellate court should only take notice of plain error under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Prophet*, 2023-Ohio-3833, ¶ 45 (6th Dist.).

**{¶ 52}** I am not of the opinion that this remark, given apparently in response to the mere presence of the trial court having intruded into the jury room, can be characterized as juror misconduct. The entire circumstance was unusual and inappropriate. The scenario howls of unbridled spontaneity by everyone involved.

19.

{¶ 53} I cannot find that this self-reported verbal exchange between a juror and her five-year-old child was of such gravity so as to somehow poison the entire jury panel. I struggle to see how any member of the jury would develop any judgment of the state's case based upon these remarks. Nothing in this record would support such a conclusion. In sum, I cannot find any reason to engage in a *sua sponte* plain error analysis.

{¶ 54} I would agree with the majority opinion and affirm the judgment of the trial court.

**DUHART, J., dissenting:**

{¶ 55} While I agree with most of the analysis of the majority, I disagree with its suggestion that defense counsel's failure to request that the court voir dire the members of the jury somehow waived the trial court's duty to investigate whether Juror No. 8's remarks "tainted the rest of the panel." Accordingly, I must respectfully dissent.

{¶ 56} As made clear by the Second District Court of Appeals in *State v. Gunnell,* 2010-Ohio-4415 (2d Dist.), this duty to investigate arises from the trial court's overall duty to ensure a fair trial and, thus, is apart from (and only tangentially related to) the defense's duty to establish bias:

> The inquiry of whether the juror has [or jurors have] been biased by the outside information should not be left to counsel for the parties. Rather, the trial court has the duty to protect the rights of the State *and* the defendant to a fair and impartial jury. This duty is reflected in R.C. 2945.03, which provides that: "The judge of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding the matters in

20.

issue." Therefore, if an allegation arises of outside influence on the jury, the trial court must lead the inquiry to determine whether prejudice has resulted from the juror misconduct.

*Id.* at ¶ 84; *see also U.S. v. McKinney*, 429 F.2d 1019, 1025 (1970), quoting 2 Wright, Federal Practice and Procedure § 554, at 491-492 (1969) (holding that "[a]s in any case in which jury misconduct is alleged," "the trial court should have conducted 'a full investigation … in order to determine whether the incident occurred as alleged, and , if so, whether it can be said with assurance to have been harmless'").

{¶ 57} The United States Court of Appeals for the First Circuit explained the trial court's duty to investigate -- and, if necessary, to remedy -- as follows:

> "[When] a colorable claim of jury taint surfaces during jury deliberations, the trial court has a duty to investigate the allegation promptly." *U.S. v. Bradshaw,* 281 F.3d 278, at 289 (2002) (footnote omitted); *see also U.S. v. Corbin,* 590 F.2d 398, 400 (1st Cir.1979). The investigation must "ascertain whether some taint-producing event actually occurred," and then "assess the magnitude of the event and the extent of any resultant prejudice." *Bradshaw,* 281 F.3d at 289. Even if both a taint-producing event and a significant potential for prejudice are found through the investigation, a mistrial is still a remedy of last resort. *See id.* The court must first consider "the extent to which prophylactic measures (such as the discharge of particular jurors or the pronouncement of curative instructions) will suffice to alleviate prejudice." *Id.* This painstaking investigatory process protects the defendant's constitutional right to an unbiased jury, *id.* at 289-90, as well as his " 'valued right to have his trial completed by a particular tribunal,' " *U.S. v. Jorn,* 400 U.S. 470, at 484 (1971) (plurality opinion) (quoting *Wade v. Hunter,* 336 U.S. 684, at 689 (1949)).

21.

*U.S. v. Lara-Ramirez,* 519 F.3d 76, 86 (1st Cir. 2008); *see also State v. Fowler*, 2016-Ohio-5867, ¶9 (2d Dist.) (quoting *Gunnell* at ¶ 86 and *Lara-Ramirez* at 86 for the proposition that court must consider which prophylactic measures, such as the discharge of particular jurors or the pronouncement of curative instructions, would suffice to alleviate prejudice).

**{¶ 58}** "'When conducting the inquiry into juror misconduct and any resulting bias or prejudice, a trial court normally will need to question the juror [or other jurors].'" *Fowler* at ¶ 9, quoting *Gunnell* at ¶ 87.

**{¶ 59}** In this case, the court, although concerned enough about juror No. 8's jury room statement to disclose it to counsel, and although faced with a motion for a mistrial by defense counsel that was grounded in part on a concern that juror No. 8 "infected the panel" with that statement, failed to conduct any inquiry of juror No. 8 or other members of the panel to determine whether there may have been a sixth amendment violation. And although the trial court expressly instructed the jury early on in the proceedings that "[t]he law requires that you consider only the testimony and evidence you hear and see in this courtroom," and further admonished the jury against forming or expressing any opinion about the case until it was finally submitted to them, the trial court never so much as issued a curative instruction to the jury following Juror No. 8's comment.

**{¶ 60}** The obvious concern with juror No. 8's comment, besides raising the possibility that she had decided the outcome of the case prior to the conclusion of the evidence, was the possibility that juror No. 8 may have said something to or in the

22.

presence of the jury – whether intentionally or unintentionally – that caused the remainder of the jury to disregard the trial court's instructions. As indicated in the majority opinion, juror No. 8 was made an alternate juror just shortly after making her statement, with deliberations taking place (entirely in her absence) soon after that. Such may have been sufficient to cure any prejudice that could have resulted directly from juror No. 8 remaining on the panel. But it did nothing to ensure or affirm the impartiality of the remaining jurors.

{¶ 61} Because the trial court had a duty to initiate, if not lead, the investigation to determine whether there may have been a violation of the Sixth Amendment guarantee in this case, I would find that the trial court abused its discretion in failing to conduct a hearing -- or simply engage in questioning of the jury -- to determine the extent of any outside influence that juror No. 8 may have introduced into the proceedings. Had an investigational hearing been conducted, appellant would have had the opportunity to establish the existence of any unfair prejudice in this case. Without it, any such opportunity was effectively, and wrongfully, denied.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.